TAX ANALYSTS, Plaintiff,

v.

INTERNAL REVENUE SERVICE, Defendant.

No. Civ.A. 00–2914(RMU).

United States District Court, District of Columbia.

Aug. 27, 2002.

William A. Dobrovir, P.C., Washington, DC, for plaintiff.

Stuart D. Gibson, U.S. Department of Justice Tax Division, Washington, DC, for defendant.

### MEMORANDUM OPINION

URBINA, District Judge.

GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the court on the parties' cross-motions for summary judgment. Tax Analysts ("the plaintiff" or "TA"), a nonprofit corporation, brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Internal Revenue Code ("IRC") § 6110, codified at 26 U.S.C. § 6110. The plaintiff seeks access to federal tax records held by the United States Internal Revenue Service ("the defendant" or "IRS"). The plaintiff claims that the IRS must disclose letter rulings that deny an organization's application for tax-exempt status or that revoke such status. The defendant counters that such records are confidential and are not subject to FOIA's mandatory disclosure requirements. The court concludes that the letter rulings are confidential and that the defendant does not have to disclose them. Accordingly, the court grants the defendant's motion for summary judgment and denies the plaintiff's motion for summary judgment.

## II. BACKGROUND

TA is a nonprofit corporation that publishes and disseminates information concerning "the enactment and administration of the tax laws of the United States, the several states and other countries, the adjudication of tax cases by courts and other tribunals ... and other subjects relating to taxation." Compl. at 2. On March 14, 2000, TA submitted a request to the IRS for access to all letter rulings issued in 1997, 1998, and 1999 by which the IRS denied any organization's application for tax exempt, or exempt organization ("EO") status ("EO denial rulings") or revoked such status ("EO revocation rulings"). *Id.* TA claims that the IRS's failure to timely respond constituted a *de facto* denial of its request. *Id.* at 3. On April 13, 2000, TA appealed this denial to the Commissioner of Internal Revenue. *Id.* TA revised its request on August 10, 2000, limiting it to "a described, identifiable sample of six EO denial rulings and six EO revocation rulings...." *Id* The IRS denied the revised request one month later. *Id.*

TA contends that the IRS must disclose the letter rulings under FOIA because they constitute "final opinions in administrative adjudications and interpretations of the tax law adopted by [the] IRS...." Pl.'s Mot. for Summ.J. at 2. TA claims that an EO denial or revocation ruling is an opinion because it "explains the final disposition" of "an agency process for the formulation of an order." *Id.* at 8. TA asserts that such rulings are issued in administrative cases, which are "the only kind of 'cases' that [FOIA] refers to." *Id.* TA also alleges that the letter rulings are interpretations of the federal tax laws, including

IRC § 501(c), which concerns tax-exempt organizations. *Id.* at 9–10.

In the alternative, TA claims that the ruling letters qualify as "written determinations" and thus the IRS must disclose them under IRC § 6110.[1] Compl. at 4. TA claims that "written determinations" are "rulings" and "determination letters," which include EO denial and revocation rulings. Pl.'s Mot. for Summ.J. at 1.

In its motion for summary judgment, the IRS contends that it can withhold the letter rulings because they are "return information" under Section 6103, which is an exception to FOIA.[2] Def's Mot. for Summ.J. at 14. The IRS argues that because FOIA does not apply, the documents could only be disclosed under IRC §§ 6110 or 6104. *Id.* at 4. The IRS insists that EO denial and revocation rulings are not written determinations under Section 6110. *Id.* at 7. The IRS further argues that the letter rulings do not deal with an organization that is exempt from taxation under Section 6104. *Id.* at 4. Thus, the IRS maintains that the records are confidential under Section 6103's "return information" provision and that it need not disclose the records to the public. *Id.* at 9. The IRS also declares that the U.S. Department of the Treasury regulations specifically mandate that Sections 6110 and 6104 do not apply to EO revocation or denial rulings. *Id.* (citing Treas.Reg. § 301.6110–1(a)). Consequently, the IRS urges the court to defer to the Treasury Department's interpretation of the IRC because of "the complexity of the taxing statutes, and the specific expertise which the Treasury Department generally brings

to administering and interpreting them." *Id.* at 11.

The court now turns to the parties' cross-motions for summary judgment.

## III. ANALYSIS

### A. Legal Standards

#### 1. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere exis-

---

**1.** Section 6110(a) states, "General Rule.—Except as otherwise provided in this section, the text of any written determination and any background file document relating to such written determination shall be open to public inspection at such place as the Secretary may by regulations prescribe." 26 U.S.C. § 6110(a).

**2.** Section 6103(a) states, in pertinent part, "General Rule.—Returns and return information shall be confidential...." 26 U.S.C. § 6103(a).

tence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene,* 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

## B. The Defendant Need Not Disclose EO Denial and Revocation Rulings

■ FOIA mandates the disclosure of all nonexempt information requested by specific parties. 5 U.S.C. § 552(a)(3); *Judicial Watch of Florida, Inc. v. U.S. Dep't of Justice,* 102 F.Supp.2d 6, 10 (D.D.C. 2000) (Urbina, J.) "Summary judgment is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Moore v. Aspin,* 916 F.Supp. 32, 35 (D.D.C.1996) (citing *Weisberg v. U.S. Dep't of Justice,* 705 F.2d 1344, 1350 (D.C.Cir.1983)). The agency bears the burden of showing that there is no genuine issue of material fact by proving the validi-

ty of the exemptions it asserts. *Weisberg,* 705 F.2d at 1350.

■ In the case at bar, the plaintiff supports its FOIA claim by asserting that EO denial and revocation rulings are "final opinions ... made in the adjudication of cases" and "interpretations which have been adopted by the agency and not published in the Federal Register." Pl.'s Mot. for Summ.J. at 2. The defendant does not refute this argument but contends that the ruling letters are subject to FOIA exemption 3 regardless of whether they originally qualified as "final opinions" or "interpretations." Def.'s Mot. for Summ.J. at 2. Exemption 3 allows an agency to withhold records responsive to a FOIA request if another statute exempts the production of those documents. 5 U.S.C. § 552(b)(3).

The defendant correctly argues that IRC § 6103, which provides that "return information shall be confidential," is a statute satisfying the requirements for exemption 3. *Church of Scientology v. Internal Revenue Serv.,* 484 U.S. 9, 11, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987) (holding that "if § 6103 forbids the disclosure of material, it may not be produced in response to a request under the FOIA"); *Lehrfeld v. Richardson,* 132 F.3d 1463, 1465 (D.C.Cir. 1998) (holding that "the IRS may not disclose 'return information' in response to a FOIA request because § 6103 specifically exempts such information from disclosure"); Def.'s Mot. for Summ.J. at 2–3. Therefore, the remaining question is whether EO denial and revocation rulings qualify as "return information" under Section 6103 for the purpose of FOIA exemption status.

■ "Return information" includes "a taxpayer's identity ... tax liability ... or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the

existence, or possible existence, of [tax] liability." 26 U.S.C. § 6103(b)(2)(A). The D.C. Circuit has clarified this definition, explaining that "data" consists of "facts" as opposed to "legal analysis." *Landmark Legal Found. v. Internal Revenue Serv.,* 267 F.3d 1132, 1137–38 (D.C.Cir.2001). In addition, "data" must be "unique to a particular taxpayer." *Id.* at 1137. The term "data" does not include "legal interpretations of statutes, rules, regulations, and judicial opinions, and the legal conclusions flowing from those interpretations." *Tax Analysts v. Internal Revenue Serv.,* 117 F.3d 607, 613–16 (D.C.Cir.1997).

■ The D.C. Circuit has interpreted Section 6103 to cover "returns filed under compulsion of law which contain information necessary to determine federal tax liability." *Tax Analysts and Advocates v. Internal Revenue Serv.,* 505 F.2d 350, 355 n. 1 (D.C.Cir.1974) (stating that Section 6103 was not meant to protect "tax advice" sought by taxpayers asking the IRS how to treat a specific set of facts relating to a tax return). In addition, the D.C. Circuit has specifically ruled that there is no distinction between "whether an applicant satisfies the statutory criteria for exemption" and "an analysis of 'the applicant's income tax liability.'" *Lehrfeld.,* 132 F.3d at 1467; *see also Breuhaus v. Internal Revenue Serv.,* 609 F.2d 80, 83 (2d Cir. 1979) (holding that Section 6103 applies to information related to tax-exempt organizations).

The court determines that EO denial and revocation rulings fall under Section 6103's confidentiality provision. The letter rulings at issue consist of factual information concerning the tax-exempt status of an organization, and are clearly "necessary to determine federal tax liability." *Tax Analysts and Advocates,* 505 F.2d at 355 n. 1. In addition, an organization's tax-exempt status is of a "taxpayer-specific character," which Section 6103 was created

to protect. *Landmark Legal Found.,* 267 F.3d at 1138.

Moreover, the plaintiff's argument that such rulings are not "return information" based on the reasoning in *Tax Analysts,* 117 F.3d 607, is misplaced. In that case, the D.C. Circuit held that Field Service Advice memoranda issued by the IRS's General Counsel were not "return information" under Section 6103 because they constituted "written determinations" under Section 6110. *Id.* at 616. The plaintiff misunderstands the difference between Field Service Advice memoranda and EO denial and revocation rulings. Field Service Advice memoranda are "means by which the national office of the Office of Chief Counsel provides field offices with advice about the tax laws in response to questions regarding specific factual situations." *Id.* The D.C. Circuit held that such "requests from field personnel for legal guidance" were "legal analyses" not protected under Section 6103. *Id.* at 609, 616. In contrast, EO denial and revocation rulings do not constitute advice or guidance, since they merely inform a specific organization of its liability to the federal government. *Id.* The court therefore rules that EO denial and revocation rulings are "return information" under Section 6103.

The next question is whether the letter rulings must be disclosed under an exception to Section 6103. The plaintiff claims that the IRS must release EO denial and revocation rulings under IRC § 6110, which mandates disclosure of "written determinations." Compl. at 4. The defendant counters by maintaining that EO revocation and denial rulings do not qualify as written determinations under Treasury Regulation § 301.6110–1(a). Def.'s Mot. for Summ.J. at 7. The defendant urges the court to adopt the Treasury Department's interpretations since they are "reasonable . . . not arbitrary and capricious, and do

not clearly contravene" the statute. *Id.* at 12. In addition, the defendant maintains that the Treasury regulations have remained unchallenged since their enactment 25 years ago. *Id.*

The court must engage in statutory interpretation, first examining the plain language used by Congress in IRC § 6110. *United States. v. Mead Corp.,* 533 U.S. 218, 231–32, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *United States & Kirsanow v. Wilson,* 290 F.3d 347, 352 (D.C.Cir.2002). Under Section 6110, a "written determination" is "a ruling, determination letter, technical advice memorandum, or Chief Counsel Advice." 26 U.S.C. § 6110(a)(1)(A). This language is ambiguous because Congress did not indicate what types of "rulings" or "determination letters" should be considered a "written determination."

■■ Since IRC § 6110 permits either party's interpretation of the statute, the court must assess whether the IRS's interpretation "is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. "When Congress has 'explicitly left a gap for an agency to fill' . . . any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *Mead Corp.,* 533 U.S. at 227, 121 S.Ct. 2164 (quoting *Chevron,* 467 U.S. at 843–44, 104 S.Ct. 2778). In addition, such regulations must be made in a "notice-and-comment rulemaking or formal adjudication." *Id.* at 230.

■■ ˙ The court first concludes that the IRS's interpretation is entitled to *Chevron* deference since the Department of Trea-

sury enacted Treasury Regulation § 301.6110–1(a) in a formal rulemaking process. *Mead Corp.,* 533 U.S. at 227, 121 S.Ct. 2164. Therefore, the court must determine whether the regulation is a reasonable interpretation of Section 6110. *Id.; Lehrfeld,* 132 F.3d at 1466. The legislative history of Section 6110 strongly supports the IRS's position, particularly the Senate reports, which clarify that a "written determination" is "written advice to taxpayers on the tax treatment of their specific transactions." S.REP. 94–938, at 303 (1976). The report goes on to state that "[a]dvice with respect to a proposed transaction may be issued upon a written request from the taxpayer," and "the letter of advice generally is called a 'ruling' and is in the form of a letter to the taxpayer." *Id.* This definition appears identical to that used by the D.C. Circuit to describe Field Service Advice memoranda. *Tax Analysts,* 117 F.3d at 609. The D.C. Circuit held that such "advice" constituted "legal analyses" falling under Section 6110, and this court concluded above that EO revocation and denial rulings are not "legal analyses." *Id.* Accordingly, the legislative history of Section 6110 favors the defendant's argument that EO denial and revocation rulings are not "written determinations." [3]

In addition, the court "must look not only at that section but at related provisions in the statute." *Id.* at 615. The other exception to IRC § 6103 is Section 6104, which requires the IRS to disclose information concerning organizations that are "exempt from taxation." 26 U.S.C. § 6104(a)(1)(A). The court determines that the plain language of this statute indicates Congress's intent to ensure that information is disclosed about organizations that are *granted* tax-exempt status. *Id.* Section 6104, however, does not mention any disclosure requirements for organiza-

---

**3.** The House reports do not elaborate on the meaning of "written determination" and are

therefore not utilized in this analysis. HR REP. No. 94–455, 94th Cong., 2d Sess. (1976).

tions whose tax-exempt status was revoked or denied. *Id.*

The court must therefore determine the reasonableness of Treasury Regulation § 301.6110–1(a) with respect to Section 6104. The regulation states that EO revocation and denial rulings are not open to the public under Section 6014. Treas.Reg. § 301.6110–1(a). Moreover, the regulation explains that "[s]ome determination letters and other documents relating to tax exempt organizations that are not open to public inspection under section 6104(a)(1)(A) and the related regulations are nevertheless within the ambit of section 6104 for the purposes of section 6110." Treas.Reg. § 301.6110–1(a).

The court agrees with the defendant that such an interpretation is reasonable, given the case law on this statute and the language of Section 6104. *Tax Analysts v. Internal Revenue Serv.*, 53 F.Supp.2d 449, 453 (D.D.C.1999) (explaining that in the case of tax-exempt organizations, Congress has provided a limited exception to Section 6103's rule regarding the confidentiality of tax returns and return information) (citing IRC § 6104(a)(1)(A)); *Sklar v. Comm'r of Internal Revenue*, 282 F.3d 610, 616 (9th Cir.2002) (holding that § 6014(a)(1)(A)'s disclosure requirement for documents in support of the exemption application is "fully consistent with the already extensive disclosure generally required of tax-exempt organizations under § 6104").

Furthermore, the defendant refers to a recommendation issued in January 2000 by the Joint Committee on Taxation, suggesting that the IRS make EO revocation and denial rulings open to the public. Def.'s Mot. for Summ.J. at 14. This indicates that Congress is considering, but has not yet enacted, an amendment to Section 6104's disclosure requirements. *Id.* The court agrees with the defendant that "it is not the role of the judiciary to sit as a committee of revision to perfect the admin-

istration of the tax laws.'" Def.'s Mot. for Summ.J. at 14; *Tax Analysts*, 53 F.Supp.2d at 453 (stating that "it is for Congress, not the courts, to modify the IRS disclosure rules"). Accordingly, the court concludes that Section 6104, and not Section 6110, covers information concerning tax-exempt organizations. Congress's exclusion of EO denial and revocation rulings from Section 6104 displays Congress's intent to make such records confidential.

Finally, turning back to Section 6110, the court must look at policy considerations in addition to legislative history and related statutes. *Chevron*, 467 U.S. at 864, 104 S.Ct. 2778. The plaintiff submits that "Congress intended and expected that §§ 6110 and 6104, enacted in the same section, § 1201, of the same public law, together would ensure disclosure of all rulings, including all rulings relating to tax exempt status...." Pl.'s Mot. for Summ.J. at 29. This interpretation, however, would undercut the purpose of Section 6103, which is to "impose greater restrictions on the disclosure of tax data." *Church of Scientology*, 484 U.S. at 17, 108 S.Ct. 271. Congress did not intend to permit disclosure of all rulings under Section 6110, given Section 6103's emphasis on protecting the confidentiality of taxpayer-specific information such as "[r]eturns and return information." 26 U.S.C. § 6103.

In sum, caselaw, the underlying legislative history, related statutes, and policy considerations all support the IRS's reasonable interpretation of Section 6110. In other words, Section 6110's term "written determination" does not cover EO denial and revocation rulings, which fall into the category of "return information" under Section 6103 and thus need not be disclosed publicly.

## IV. CONCLUSION

For all these reasons, the court grants the defendant's motion for summary judg-

ment and denies the plaintiff's motion for summary judgment. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this _____ day of August, 2002.

## ORDER

GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this _____ day of August, 2002, it is

**ORDERED** that the defendant's motion for summary judgment is **GRANTED**; and it is

**FURTHER ORDERED** that the plaintiff's motion for summary judgment is **DENIED**.

**SO ORDERED**: